FRANCIS R. WHEELER AND CHAUNCEY SMITH *v.* THOMAS G. BREWER.

In order to entitle an absent defendant to claim the benefit of the statute of limitations, upon the ground that he has had known property within this state, it has been uniformly holden, that the defendant's ownership of the property must be notorious to such an extent, that it would not escape a reasonable search and inquiry on the part of the plaintiff.

Where it appeared, in such case, that the defendant, at the time he left the state, left some personal property and some debts due to him in the town of his late residence, and that the fact, that he had left such property, was known to "several persons," but was not generally known, and that the plaintiffs resided in another town, twenty miles distant, it was held, that the property was not *"known"* within a just and practical construction of the statute.

It is not sufficient, in such case, in order to prevent the running of the statute, that the defendant had such a title to property within the state, during the time of his absence, that a writ might legally have been served, for the mere purpose of keeping the demand alive; but the property must have been capable of yielding a substantial benefit to the plaintiff.

Where it appeared, in such case, that the defendant, at the time he removed from this state, had the legal title to a farm in the town in this state from which he moved, but had never been in actual possession of the land, but it had been occupied by his grantor after the purchase by the defendant, the same as before, and had continued to stand to his grantor in the grand list of the town, and the plaintiff resided in the town where the land was situated, but had no actual knowledge of the defendant's claim to the land, it was held, that this did not constitute *"known property,"* within the meaning of the statute.

BOOK ACCOUNT. Judgment to account was rendered, and an auditor was appointed, who reported the facts substantially as follows.

The plaintiffs' account amounted to $14,91, and accrued in June, 1839; and they were entitled to recover that sum, unless barred by the statute of limitations, upon which the defendant relied. The plaintiffs proved, that the defendant, after the account accrued, had resided within this state less than six years,—having been absent from the state a portion of the time. The defendant insisted, that during the time of such absence he had known property within this state, which the plaintiffs might have attached by

15

the ordinary process of law.  In reference to this property the auditor reported these facts.

In 1814 a lot of land in Berkshire, containing one hundred and forty acres, was sold at vendue by the collector of a land tax, and the title thus conveyed passed through several intermediate grantees to the defendant's father, who purchased it in 1833, and went immediately into possession, and continued in possession until the commencement of this suit, making improvements upon the same from time to time.  In 1843 the defendant purchased this land of his father, and the deed to him was duly recorded in Berkshire, and he continued to own this land during all the time of his absence from the state after the plaintiffs' account accrued,—subject to a mortgage from his father to one Royce, on which there was due, at the time of the defendant's absence from the state, $273,00,—leaving the equity of redemption worth at that time $427,00.  The defendant resided in Highgate, at the time he received the deed from his father, and the deed was executed there, and was carried by his father, at the defendant's request, to the town clerk's office in Berkshire for record.  The defendant never took actual possession of the premises, but permitted his father to occupy them; and they were set to his father in the grand list of Berkshire.  The plaintiffs resided in Berkshire at the time their account accrued against the defendant, and have continued to reside there ever since.

When the defendant first left this state, which was February 1, 1844, he held a note for $35,00 against one Stimits, of Highgate, who was perfectly responsible, which was payable in cattle in October, 1844; and this note was deposited by the defendant with one Jacob Brewer, for him to receive the cattle for the defendant, when the note should become due.  Jacob Brewer did receive the cattle for the defendant, in October, 1844, and disposed of $10,00 worth of them to pay a debt due from the defendant to one Hall, and retained the remainder of the cattle for the defendant until June, 1845, when the defendant returned and let them to one Hefflon, under an agreement, that Hefflon should return double the number to the defendant in four years.  At the same time Hefflon took from the defendant twelve sheep, to double in four years.  The defendant soon after left the state again, and was absent several months.  When he first left the state, he held a note against Jacob

Wheeler et al. *v.* Brewer.

Brewer for $27,00, payable in cattle; and this note he also left with said Brewer, to keep for him during his absence. The fact, that the defendant owned these notes and cattle, was known to several persons, but was not generally known in the neighborhood in Highgate, where the defendant resided previous to his leaving the state, and was not known to the plaintiffs. The defendant left Berkshire soon after the plaintiffs' account accrued, and continued to reside in Highgate from that time until after the commencement of [this suit, with the exception of the occasional absences above mentioned; and during this time he labored for different persons, and especially for the persons against whom he held the above named notes; and it did not appear, that he made any effort to conceal either his residence or the property or notes owned by him, as above named.

Upon these facts the auditor submitted to the court the question as to the defendant's liability. A question as to another mortgage upon the real estate was also raised before the auditor; but as it was not passed upon by the supreme court, the facts in reference to it need not be detailed.

The county court, September Term, 1847,—Royce, Ch. J., presiding,—rendered judgment for the plaintiffs, upon the report, for the amount of their account.    Exceptions by defendant.

*L. E. Pelton,* for defendant, cited 2 Stark. Ev. 895; *Mazozon* v. *Foot,* 1 Aik. 282; Rev. St. 307, §14; Thomp. St. 57; *Tucker* v. *Wells,* 12 Vt. 240; *Byrne* v. *Crowninshield,* 1 Pick. 263; Rev. St. 190, § 3; 195, § 47; 242, §§ 31, 32; *Wood* v. *Barney,* 2 Vt. 369; *Fay et al.* v. *Green,* 2 Aik. 386; *Phelps et al.* v. *Wood,* 9 Vt. 399; Acts of 1841, p. 16, § 22.

*J. Rand,* for plaintiff, insisted, that the personal property and notes were not sufficiently *known* to be owned by the defendant, within the meaning of the statute; and that a record title to real estate cannot be deemed to be known property, within the statute, without some other act of ownership; and cited *Byrne* v. *Crowninshield,* 1 Pick. 263; *Hill* v. *Bellows,* 15 Vt. 727; *Mazozon* v. *Foot,* 1 Aik. 282; *Tucker* v. *Wells* 12 Vt. 240.

The opinion of the court was delivered by

ROYCE, CH. J.   The statute of 1797 was designed to conform to the ancient rule of construction, that after a statute of limitation had commenced running upon a cause of action, it would continue to run, notwithstanding any practical impediment or legal disability, which might occur.   And the saving provision of that statute, in reference to the matter now under consideration, was accordingly extended only to the case, where the defendant was absent from the state, when the right of action accrued.   The statute of Nov. 9, 1832, changed that rule, by excluding from the computation of time, under the statute, the period of the defendant's absence from the state, if he went away any time before the action was barred.   The present statute, Rev. St. Ch. 58, sec. 14, has combined the two former provisions.   And by all the statutes this saving of the plaintiff's right has been limited to the case, where the defendant, while so absent from the state, has not had known property within the state, which could be attached by the common and ordinary process of law.   The only question is, whether the present defendant had such property within the state, during the period of his absence.

It was decided in *Tucker* v. *Wells,* 12 Vt. 240, that actual knowledge of the property and of the defendant's title to it need not be possessed by the plaintiff, if by reasonable diligence he would acquire that knowledge.   But in order to warrant this inference, and thereby to bar the action, it has been uniformly holden, that the defendant's ownership of the property must be notorious to such an extent, that it would not escape a reasonable search and inquiry on the part of the plaintiff.   *Hill* v. *Bellows,* 15 Vt. 727.   *Sessions* v. *Bicknell,* 6 N. H. 557.   *Dow* v. *Sayward,* 12 N. H. 271.   *Dwight* v. *Clark,* 7 Mass. 515.   *Little* v. *Blunt,* 16 Pick. 359.

In reference to the personal property the auditor reports, that it was not generally known, even in the neighborhood where the defendant had lived, in Highgate, that he owned any such property ; though the fact was known to "several persons."   The plaintiffs lived some twenty miles distant, in another town.   Now we must infer from the facts reported, that, had the plaintiffs gone or sent to Highgate to look after the defendant's property, they would have been told by most of the people in the very neighborhood of his late residence, that he had no property there.   If a different inference could be justified, the auditor would doubtless have so stated.   And as reasonable

diligence could not exact an inquiry to be made of all persons, we think the property was not " known," within a just and practical construction of the statute.

The omission of the plaintiffs to attach the land in Berkshire might properly be considered in reference to the sufficiency of the defendant's title. That title appears to have originated in a collector's sale, in 1847. And though the auditor refers to the vendue proceedings, he does not state, that he found them to have been regular, or even that they were shown before him. They do not appear to have accompanied his report. Neither does it appear, that the land has yet been in the actual possession of any one for the period of fifteen years. Now it has not been considered sufficient in this state, to show that a writ might legally have been served, for the mere purpose of keeping the demand alive, as held in *Byrne* v. *Crowninshield*, 1 Pick. 263, but we hold that the property must be capable of yielding a substantial benefit to the plaintiff. The language of WILLIAMS, Ch. J., in *Hall* v. *Bellows*, before cited,— is even stronger than this ; he says,—" The defendant should' prove that he had known and visible property, from which the plaintiff might have satisfied his demand. But the present being, at least, a stronger case on this point in favor of the defendant, than that of *Hill* v. *Bellows*, we prefer to waive a decision upon the apparent sufficiency of the title, and to inquire merely, whether the defendant's ownership was sufficiently *known* to satisfy the statute.

The report finds, that the defendant never lived upon the land, nor even in the town of Berkshire, after he took the deed.from his father, John G. Brewer. The father continued to occupy the land as before, had it regularly placed in the list in his name, and does not appear to have avowed himself to be the defendant's tenant. It is found, that the plaintiffs had no actual knowledge of the defendant's claim to the land. And if, under these circumstances, the plaintiffs were bound to search the town records in Berkshire, they must have been equally bound to search all town records throughout the state; for the statute does not go upon constructive notice, but upon knowledge in fact, either possessed by the party or to be attained by reasonable diligence.

We think the Berkshire land was not " known property " within the statute, and that the judgment below must be affirmed.