# FRANKLIN COUNTY,

---

## Homer E. Royce *v.* Elijah Hurd.

*Statute of limitations. The act of 1797 and 1832, considered. Evidence.*

A claim that arose under the statute of limitations passed in 1797, but not being barred, before the passage of the act of 1832, is, in terms, controlled by that act, after it took effect.

And it was held, that the distinction between the act of 1797 and 1832, is, in fact, this,— that in the former, if the statute began to run, it continued to run, while under the latter, the debtor must either remain in the State, or leave sufficient known property here, out of which his debt could be satisfied, or else the statute would not produce a bar.

And this property must be estate real or personal, unembarrassed, and which is liable to be levied upon for the satisfaction of the debt; and this estate should so continue, during the whole period of the debtor's absence from the State, in order to continue the operation of the statute, or the statute of limitations would cease to run.

Probate proceedings, where the title of land comes in question, are required by statute to be recorded in the town clerk's office, as much as in the probate office, and unless so recorded they are not admissible as evidence of title.

Assumpsit on a promissory note, alledged to have been executed by the defendant on the 31st day of August, A. D. 1832, for eighty-four dollars and forty cents, payable to Benjamin Moses, or order, in one day from date, with interest, and by him indorsed to the plaintiff. Pleas: 1. Non assumpsit. 2. The statute of limitations. Replication and rejoinder, and trial by jury.

The plaintiff, in answer to the defendant's first plea, having first proved the loss of the note pending the suit, introduced evidence tending to prove the execution of the same by the defendant, and the indorsement thereof by said Moses, the payee; and the contents of the note and purport of the indorsement corresponding with the description given in the declaration.

The evidence also tended to prove, that from the time of the date and execution of said note, and a little before, the defendant had been constantly absent from this State, till after the commencement of this action, with the exception of his once or twice passing through the town of Franklin. There was no evidence tending to show that his so being in the State, was known to the holder of said note, so that he could have arrested his body, or obtained personal service on him.

The defendant, in support of the issue on his part, under his second plea introduced a deed from Samuel Hubbard to Ebenezer Marvin, dated in August, A. D. 1791, of lot number 1, in range 10, in Huntsburgh, (now Franklin,) also a deed from Sarah Marvin to Artemas Holden, of a portion of said lot, and including the part described by defendant in his rejoinder; and also a deed from said Holden to the defendant, of the same, dated November 7th, A. D. 1826. He also offered the probate and probate records of the will of Ebenezer Marvin, to which the plaintiff objected on the ground that neither said will nor an attested copy thereof had ever been recorded in the town clerk's office of the town of Franklin; but the objection was overruled, and the probate and probate record admitted.

He also introduced evidence tending to show, that before 1800, Ebenezer Marvin took possession of said lot number 1, and he and his widow, Sarah Marvin, occupied the same until she deeded to Holden; that said Holden possessed said land under said deed from Sarah Marvin, until he deeded to the defendant; and that the defendant occupied and possessed it after the execution of said last deed for several years, and until after the execution of the note described in the plaintiff's declaration; and that the defendant, while he resided in this State, resided on said land; and that said land had afterwards generally borne the name of the Hurd place.

The evidence also tended to show, that after the defendant went into the possession of said place, and down to the commencement of this suit, some portion of the people in the vicinity, spoke of it as belonging to the defendant, and so considered it. That in 1837, or 1838, one Dan Rublee, who was then the holder of the note now in suit, directed a writ to be made upon said note, against the defendant, returnable before a justice of the peace, and said place to be attached on said writ, which was accordingly done.

It appeared that there was over one hundred dollars due on said note, at the time said justice writ was made out; that no personal service was made on the defendant, and no notice was given him of the pendancy of said suit, and that the said suit was not continued on account of defendant's absence from the State. The testimony also tended to show, that if any judgment was rendered in said suit, it was by default. That said justice, before whom said writ was made returnable, never made any record of said judgment, and that said justice died before the commencement of this suit.

The plaintiff then introduced in evidence, the record of a power of attorney, from the defendant to his wife, Maria Hurd, (therein styled Maria Hieliker, wife of defendant,) dated May 12th, 1834, and a deed of said place, with some adjoining land, executed by said Maria Hurd to one William Crane, dated February 19th, 1835, and introduced evidence tending to show that immediately after the execution of said last deed, said Crane, by his tenants, took possession of said place, and occupied it, claiming to be the owner, and continued so to occupy without interference or objection from the defendant down to the commencement of this action.

That during said period, said place described in the defendant's rejoinder, was set in the grand list of the town of Franklin, to said Crane, and that he paid all taxes on the same, and it was generally reported and considered to be the property of the said Crane.

Upon the evidence thus introduced the plaintiff contended, that said place described in defendant's rejoinder, ought not to be treated as known property of the defendant, which the holder of said note was bound by law to attach, and especially that it ought not to be so treated after said deed and possession, taken and held by said Crane, as aforesaid.

But the court decided, and so instructed the jury, that if the defendant occupied and resided in the premises described in the rejoinder, while he resided in this State, and the holder of the note in the summer of 1838, directed said premises to be attached by virtue of a writ on the note, the verdict should be for the defendant, and a verdict was returned accordingly.

To all which decisions and directions of the court, the plaintiff excepted.

Royce *v.* Hurd.

*H. E. Royce* and *H. R. Beardsly* for plaintiff.

1. We think the court erred in admitting the probate and probate records of the will of Ebenezer Marvin. Stat. (Slade's Comp.) Chap. 44, § 86. Revised Stat. Chap. 46, § 37. *Ives* v. *Allyn,* 12 Vt. 587.

If the probate and probate records of a will can be given in evidence to prove the title to real estate, without having first been recorded in the town clerk's office of the town in which such real estate is situate, it is not easy to assign to the statute any useful or sensible construction. *Harrington et al.* v. *Gage et al.,* 6 Vt. 532.

2. The defendant was bound under his second plea, to show that he owned the piece of land described in his rejoinder; and that this fact was generally known in the neighborhood, or to the holder of the note in suit. And this ownership and the knowledge of it, we insist must have existed for the period of six years after the note became payable. *Hill* v. *Bellows,* 15 Vt. 727. *Wheeler et al.* v. *Brewer,* 20 Vt. 113.

3. If the court should be of opinion, that the defendant showed that he acquired such a title to the land under his deed from Holden, that plaintiff was bound to attach it, then we insist that the defendant did not continue to own the land, within the meaning of the statute, after the deed to Crane, February 19th, 1835. That deed doubtless was defective; but it was founded on a full executed promissory consideration, and the defendant either gave possession, or acquiesced in its being taken, under the deed, and being held for a long period. The defendant, therefore, became bound in equity to complete the title in Crane. And we insist, that the record of the deed from defendant to Crane, was constructive notice of the rights which Crane had then. But if the record was not constructive notice, we believe the law is well settled that possession under such a deed is *legal* notice, which cannot be *explained away or rebutted.* *Governeur* v. *Lynch,* 2 Page 300. *Kidder* v. *Lafferty,* 1 Whea. 304. *Leighner* v. *Mooney,* 11 Watts 412. *Hardy* v. *Summers,* 10 Gill & J. 316. *Webster* v. ————, 6 Maine Rep. 256. *Knox* v. *Plummer,* 7 Maine Rep. 464. *Knox* v. *Jackson,* 6 Wend. 213. *Parks* v. *Jackson,* 11 Wend. 442. *Rublee* v. *Mead,* 2 Vt. 544.

Our courts, in construing the statute, have properly held, that

the creditor was only bound to sue when actual collection, or something could be realized on the demand. *Hall* v. *Brewer*, 15 Vt. 727. *Wheeler et al.* y. *Brewer*, 20 Vt. 113.

Finally, we insist that the defendant's creditors were never bound to attach this land, in order to prevent the effect of the statute, though they may have had full knowledge of all that appeared on the trial below, and especially after the defendant deeded to Crane in 1835.

*C. Beckwith* for defendant.

1. The probate and probate record of the will of E. Marvin, was properly admitted as evidence in the court below. *Ives* v. *Allyn*, 13 Vt. 629.

2. The evidence shows that the defendant had an indisputable title to the premises mentioned in the rejoinder in 1832, at the time the cause of action accrued. His title remained without any embarrassment until February, 1835. The statute, therefore, began to run, and when it once begins to run, it continues so to do, notwithstanding any impediment which may occur. . By the same rule of construction, if the defendant had had no known property within the State when the cause of action accrued, the statute would not have begun to run, until he came into the State. Any other rule would make the statute of 1797 run when the defendant happened to be within the State, or to have property here, which would be contrary to the long and well settled construction of the court. Statute of 1797, § 10. Slade's Ed. p. 291. *Lowry* v. *Keyes*, 14 Vt. 66. *Wheeler* v. *Brewer*, 20 Vt. 113.

3. The statute of 1832 does not apply to this case. It was only intended to prevent the operation of the statute, when the defendant should leave the State after the cause of action accrued.

But admitting the act of 1832 to apply to this case, it must receive the same construction as the act of 1797. The statute would continue to run if the defendant had known property when he left the State, and having once begun to run would continue so to do.

4. The power of attorney from the defendant to Maria Hurd, was void, also the deed from Maria Hurd to William Crane. As the invalidity of these instruments appeared upon their face, they created no cloud upon the defendants title. *Simpson* v. *Lord Howden*, 3 M. & C. 97.

The jury have found, that the owner of the note knew that the defendant was the owner of the premises in the summer of 1838, and the present plaintiff has attached them upon the writ in this case. If nobody in interest has been deceived by the power of attorney and the deed to Crane, it would be singular to hold that they suspended the operation of the statute because somebody might have been deceived by them.

The opinion of the court was delivered by

REDFIELD, J. In regard to the statute of limitations, this case arose under the act of 1797, but not being barred before the passage of the act of 1832, is, in terms, controlled by that statute, after it took effect. The terms of the statute are, "against whom there "*is or may be* any cause of action;" thus, *ex vi termini*, including all *subsisting causes of action*, at the time the act took effect.

The construction of this statute seems pretty well settled by the decisions had under it, so far as this case is concerned. The property, which it is necessary for the debtor to have, so as to preclude the plaintiff from deducting the absence of the defendant from the State, in computing the term of the statute bar, must be property sufficient to satisfy such a portion of plaintiff's debt, as fairly to justify the institution of legal proceedings, for the collection of the debt. The creditor is not bound to sue merely to keep his debt alive, as he would be if the debtor were within the State, inasmuch as the judgment which he could obtain, could only bind the property attached, or within the jurisdiction, unless the debtor volunteered to appear in the suit. WILLIAMS, C. J., in *Hill* v. *Bellows*, 15 Vt. 733, declares, that the property must be sufficient to satisfy the whole debt. And it seems to me such is the reasonable import of this portion of the statute of 1832. "Shall not have "known property, within this State, which could, by the common "and ordinary process of law, be attached," seems to imply, that it shall be such property, in such position, and to such extent, as to enable the party to take it, to some beneficial purpose, i. e., to satisfy his debt; for beyond that, or without that, it would afford no excuse for the absence of the debtor himself. That the party could have secured property enough to enable him to obtain a judgment at his own cost, which he could not satisfy in this jurisdiction, for want of any thing to levy upon, and which would be of

no avail in any other jurisdiction, is certainly no excuse for the absence of the debtor, and no sufficient reason why the statute of limitations should be suspended.

The case of *Wheeler* v. *Brewer*, 20 Vt. 113, seems to decide sufficiently, that the defendant's ownership of the property must be so notorious, as to enable the creditor, by the use of common diligence, to find and attach it. It must, too, no doubt, be estate, unembarrassed, and which is liable to be levied upon for the satisfaction of the debt. It is, therefore, questionable how far the creditor would be bound to regard a merely equitable title, or an incumbered title, to real or personal estate, in his debtor.

And it would *seem*, that this estate should so continue during the whole period of the debtor's absence from the State, in order to continue the operation of the statute. For the statute seems, in terms, to provide that absence from the State, (not having known property, which might be attached,) shall be deducted from the term of limitation fixed, of course, when this property ceases, or ceases to prove the essential requisites implied in the statute, the absence *must* be deducted. This very point, with reference to a similar statute, came under consideration in the case of *Dow* v. *Sayward*, 14 N. H. 271, and it was there considered, that the property must continue, or the statute of limitations would cease to run. And there seems to us to be this distinction between the act of 1797 and 1832, that in the former, if the statute began to run, it continued to run, while under the latter, it seems to have been the purpose of the statute, to arrest the operation of the statute whenever the debtor was absent from the State, not having known property, &c. In short, the debtor must either remain in the State, or leave sufficient known property here, out of which his debt could be satisfied, or else the statute would not produce a bar. This is certainly far more just and reasonable than the earlier statute upon the subject. But it is perhaps not needful absolutely to determine this point here. And whether the pleadings are in form, to raise all these questions properly, it is not needful here to inquire. It would seem, that the case will have to go back, upon the admission of the probate proceedings, not having been recorded in the town clerk's office. The statute is express in requiring such record, and this court in *Harrington* v. *Gage*, 6 Vt. 536, held such record indispensable to a recovery, in ejectment. And we

do not well perceive how any distinction can fairly be made, between the effect of such proceedings before recorded in the town clerk's office, in an action of ejectment, and other actions, where the title of land comes in question. The statute requires the record in the town clerk's office, as much as in the probate office. How far the defect may be now supplied, it is not needful to inquire. Whether the proof being perfected, the title, and its notoriety will not also be able to be made out, will hereafter depend, to some extent, probably, upon a different state of evidence.

Having made these suggestions, to enable the parties to present the case in the proper form, should it be further litigated, we scarcely deem it expedient to go very much into the questions of title raised at the former trial.

The title to the land would seem to have been sufficiently in the debtor, and this sufficiently known to the creditor, before the attempted conveyance to Crane. This conveyance seems to be admitted, on all hands, to have been altogether defective, as a legal conveyance. How far it created such an equity in Crane, as to bring it without the terms of the statute, may properly admit of some question. There are so many other grounds upon which it seems desirable to have a reconsideration of the case, that we have not spent much time upon this.

*Judgment* reversed and case remanded.